**In re the S. S. SEATRAIN LOUISIANA on the complaint of TYLER TANKER CORP. and Seatrain Lines, Inc., Plaintiff,**

**v.**

**CALIFORNIA STEVEDORE AND BALLAST CO. et al., Defendants.**

**No. C–74–2478 WHO.**

United States District Court,
N. D. California.

July 20, 1976.

Acret & Perrochet, Larry D. Henson, Ronald H. Klein, San Francisco, Cal., for Marathon-Le Tourneau Co.

Ericksen, Ericksen, Lynch, Mackenroth & Arbuthnot, Inc., Oakland, Cal., for Jack Frost Electric Co. and Jack Frost.

Cooper, White & Cooper, Robert R. Callan, San Francisco, Cal., for California Stevedore.

## OPINION

ORRICK, District Judge.

This litigation is another chapter in the ongoing saga of judicial interpretation of the 1972 Amendments (the Amendments) to the Longshoremen's and Harbor Workers' Compensation Act (the Act). 33 U.S.C. § 901 *et seq.* The issue before the Court is whether, subsequent to the Amendments, a stevedore-employer may be liable for indemnity to third-party claimants under either a contract theory of third-party beneficiaries or a tort theory. This is a case of first impression in this District and this Circuit.[1] For the reasons hereinafter set forth, I find that no action for indemnity will lie against the stevedore-employer by the third-party claimants, and I grant defendant California Stevedore and Ballast Co.'s (CS&B) motion for summary judgment as to Marathon-Le Tourneau (Marathon), Frost Electric Company, and Jack Frost, individually (hereinafter Frost collectively).

I.

On May 27, 1974, during unloading operations aboard the vessel the S.S. Seatrain Louisiana, a crane fell killing and injuring several longshoremen employed by defendant CS&B. The crane was manufactured by defendant Marathon, and defendants Frost had been employed by the vessel to

Lillick, McHose & Charles, Graydon S. Staring, Frederick W. Wentker, Jr., David W. Condeff, San Francisco, Cal., for plaintiff.

1. Although cross-claimants, Marathon-Le Tourneau, Frost Electric Company, and Jack Frost, individually, claim that *Mills v. United Philippine Lines,* No. C–74–1934 RHS (N.D.Cal., filed Sept. 11, 1974) and *Nancy v. American President Lines,* No. 74–1880 LHB (N.D.Cal., Sept. 6, 1974), are two cases decided within this district that are dispositive of the issue, neither of these cases involved cross-claims for indemnity based on an underlying injury to an employee of a stevedore from whom indemnity was sought.

repair and inspect the crane a few days prior to the accident. No express contracts of indemnity existed between Marathon and CS&B or between Frost and CS&B.

The vessel filed a complaint for limitation and exoneration of liability suing CS&B, Marathon, and Frost. Defendants Marathon and Frost cross-claimed against CS&B for indemnity, alleging that CS&B had a duty to indemnify under either a contract theory of an implied warranty of workmanlike performance or a tort theory. CS&B moved for summary judgment on these cross-claims, claiming that as a matter of law the Amendments to the Act eliminated the cross-claimants' asserted indemnity action.

## II.

Since there were no contracts and no express warranties between CS&B and the cross-claimants Marathon and/or Frost, the cross-claimants necessarily based their contractual theory of indemnity on the claim that they are third-party beneficiaries of a warranty of workmanlike performance that arose from the contractual relations between CS&B and the vessel. To understand the fallacy in this reasoning, a review of the Act, pre-Amendments and post-Amendments, is helpful.

In *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), the Supreme Court established the doctrine of unseaworthiness which permitted, irrespective of negligence, tort recovery against the vessel for a failure to maintain a reasonably fit ship. To counterbalance this harsh no-fault liability imposed on the vessel, the Court soon fashioned the doctrine of a warranty of workmanlike performance running from the stevedore company to the vessel. *Ryan Stevedore Co. v. Pan-Atlantic Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Thus, if the stevedore brought about the conditions that rendered a vessel unseaworthy, the vessel was entitled to indemnity from the stevedore. Although a seemingly just tradeoff, the end result was a circuitous route of litigation. Under the Act an injured employee was entitled to compensation from his stevedore-employer. The employee then sued the vessel under the doctrine of unseaworthiness. The vessel, or rather the vessel's insurer, sought indemnity from the stevedoring company, or its insurer. The stevedore, having already paid workman's compensation to its employee was once again called upon to indirectly compensate the employee through the indemnity route. The costs of this indemnification were in turn defrayed by the vessel in the guise of higher stevedoring fees.

Dissatisfied with this round-about recovery system, Congress amended the Act in 1972 by adding Section 905(b), abrogating the vessel's indemnity action against the stevedore and breathing new life into the existing Section 905(a) of the Act that makes the stevedore's compensation payments to its employee the "exclusive liability" of the stevedore-employer. Section 905(b) provides in pertinent part:

" * * * the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void."

The legislative history is clear that Section 905(b) was intended to prohibit recovery by the vessel against the stevedore under both a *Ryan* contract theory of warranty of workmanlike performance and in tort. In explaining Section 905(b) the House Committee on Education and Labor said:

"the bill expressly prohibits such recovery, whether based on an implied or express warranty. It is the Committee's intention to prohibit such recovery under any theory including, without limitation, theories based on contract or tort." U.S. Code Cong. and Admin.News, 92d Cong., 2d Sess., Vol. 3, p. 4704 (1972).

As stated in the Senate Report, Congress intended that the right to compensation under the Act "again becomes the exclusive remedy against the stevedores as had been intended since its passage in 1927". S.Rep. No.92–1125, 92d Cong., 2d Sess. 5 (1972).

In exchange for this exclusivity of liability granted to the stevedore and abrogation

of the vessel's indemnity action based on a warranty of workmanlike performance, Congress also abrogated the vessel's liability under the warranty of seaworthiness, leaving only a negligence action against the vessel. Section 905(b) states in pertinent part:

"* * * the liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred."

Thus, the *Ryan* indemnity route was justifiably foreclosed since the underlying rationale for it, the mitigation of the harsh no-fault doctrine of a warranty of seaworthiness, had been removed. *Ramirez v. Toko Kaiun K. K.*, 385 F.Supp. 644 (N.D.Cal. 1974).

While the Amendments, the legislative history, and case authority are clear that no indemnity action against the stevedore may be brought by the vessel, the statute and the legislative comments do not specifically address the question raised here: whether an indemnity action against the stevedore may still be brought by third parties. However, whereas here, there is no actual contract of indemnity between the stevedore and the third party,[2] the third parties cannot claim to be third-party beneficiaries of a contractual warranty of workmanlike performance running to the vessel since subsequent to the Amendments it is perfectly clear no such underlying warranty exists. At best, they are third-party beneficiaries to a nullity.

As seen from the doctrinal developments in *Seas Shipping Co. v. Sieracki, supra,* and *Ryan Stevedore Co. v. Pan-Atlantic Corp., supra,* the warranties of seaworthiness and workmanlike performance were reciprocal and dependent duties. *Fitzgerald v. Compania Naviera La Molinera,* 394 F.Supp. 402 (E.D.La.1974); *Davis v. Chas. Kurz & Co., Inc.,* 483 F.2d 184 (9th Cir. 1973).

The *Kurz* case is particularly instructive on the interdependent relationship of the warranty of seaworthiness and the warranty of workmanlike performance. In *Kurz,* the owner of the vessel hired a contractor to do repairs on the ship. The contractor in turn hired a subcontractor. During the sandblasting operations an employee of the subcontractor was injured. He sued the vessel owner and the contractor, who in turn sought indemnity against the subcontractor. The subcontractor was found to be the only party negligent. Nonetheless, the court denied the indemnity claims, holding that there was no implied warranty of workmanlike performance running from the subcontractor to either the vessel or the contractor. Although *Kurz* was a pre-Amendment case where a warranty of workmanlike performance would normally apply, since the ship was in dry dock and was a "dead ship" at the time of the accident, the court found that the vessel owner did not owe a warranty of seaworthiness to the injured employee. Concomitantly, the court found the underlying rationale for the *Ryan* warranty of workmanlike performance from the stevedore to the vessel was absent. The court clearly stated that the existence of an implied warranty of workmanlike performance depends on a duty of seaworthiness imposed on the party seeking indemnification. *Davis v. Chas. Kurz & Co., supra,* at 187.

The cross-claimants' reliance on pre-*Ryan* cases such as *American President Lines, Ltd. v. Marine Terminals Corp.*, 234 F.2d 753 (9th Cir. 1956), and *United States v. Rothschild International Stevedoring Co.*, 183 F.2d 181 (9th Cir. 1950), where a warranty of workmanlike performance was imposed although the concomitant doctrine of a warranty of unseaworthiness had not yet been established, are inapposite. These pre-*Ryan* cases implied warranties based on a theory of contractual privity because of

2. Cross-claimants' arguments that they are left unprotected without an indemnity action in a situation where the stevedore's misuse of their equipment is the actual cause of an accident and that the abrogation of their indemnity action actually rises to the level of an unconstitutional taking of property without due process (*Carlson v. Smogard,* 298 Minn. 362, 215 N.W.2d 615 (1974)) is unpersuasive. The cross-claimants may insure the indemnity protection they seek by entering into a formal indemnity contract with the stevedore.

the reciprocal nature of the warranty of seaworthiness. *Waterman Steamship Corp. v. Dugan & McNamara,* 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960). In the case at bar, there being no contractual privity between the stevedore and the cross-claimants, the indemnity action must hinge on the *Ryan* -type warranty which is contingent upon the existence of a reciprocal duty of workmanlike performance. *Davis v. Chas. Kurz & Co., Inc., supra.* The cross-claimants having had no such independent duty to the stevedore, CS&B, and the Amendments abrogating the duty to the vessel, the cross-claimants are not entitled to the benefit of indemnity founded on the implied warranty of workmanlike performance.

█ In addition, permitting the sought indemnification would run *contra* to the purposes of the Amendments. Congress specifically intended to cut off circuitous indemnity litigation and to make the compensation payments under the Act the exclusive liability of the employer. Permitting this cross-claim would once again open the door to the very type of actions Congress was trying to avoid. Judge Rubin's opinion in *Fitzgerald v. Compania Naviera La Molinera, supra,* is persuasive. In *Fitzgerald,* two employees of the Board of Trade were overcome by carbon tetrachloride fumes while inspecting grain in the hold of a vessel. The employees being covered by the Act, their estates received compensation from their employer, the Board of Trade. Cross-claims were then filed against the employer Board of Trade by the vessel, the grain elevator, and the vessel charterer. After tracing the development of the *Sieracki-Ryan* indemnity action and its abrogation under the Amendments and acknowledging the absence of specific congressional comment on third-party claims, Judge Rubin dismissed all the indemnity cross-claims against the Board of Trade reasoning that Congress had meant to limit employer liability as to compensation and to eliminate indemnity actions against the employer. He reasoned that permitting such cross-actions would circumvent the principle at the very heart of the Act's new compensation scheme. In the case at bar, the position of the Board of Trade employer would be analogous to that of CS&B, the stevedore employer. As in *Fitzgerald,* permitting the indemnity claim would contravene the spirit of the Act.

### III.

The cross-claimants' alternate indemnity theory based on tort liability must also fail. Substituting a schedule of compensation payments from the employer to the injured employee regardless of fault, the Act eliminated tort liability of the employer to the injured worker. 33 U.S.C. § 905.

█ When a party is protected by a limitation of liability provision such as Section 905 of the Act, no indemnity in tort may be obtained absent an express or implied contract of indemnity. *Davis v. Chas. Kurz & Co., Inc., supra; United Air Lines, Inc. v. Wiener,* 335 F.2d 379 (9th Cir. 1964). The reasoning behind this rule is sound since otherwise a party that had no underlying tort liability to the injured worker would be liable via the back door through an indemnity action. This Circuit has considered this very problem under the Act in *United Air Lines, Inc. v. Wiener, supra.* There, the litigation arose from a mid-air crash of a United Air Lines plane and an Air Force jet fighter. Based on the limitation of liability provisions of the Federal Employee Compensation Act (FECA), 5 U.S.C. § 757(b), the Court denied United Air Lines' indemnity claims against the United States. Specifically analogizing the FECA limitation of liability scheme to that of the Act, the court held that the exclusive liability provision of the FECA, and concomitantly the Act, negate the underlying liability necessary for indemnity. *United Air Lines, Inc. v. Wiener, supra,* at 403.

The cases of *Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co.,* 410 F.2d 178 (5th Cir. 1969) and *States S. S. Co. v. Rothschild International Stevedoring Co.,* 205 F.2d 253 (9th Cir. 1953), relied on by the cross-claimants in support of their indemnity claim based on tort, have been impliedly

rejected by the Supreme Court in *Weyerhauser Steamship Co. v. Nacirema Co.,* 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), when it repudiated a distinction between active and passive negligence in indemnity actions and specifically rejected in this district by *Mickle v. Henriette Wilhelmine Schulte,* 188 F.Supp. 77 (N.D.Cal.1960).

According, IT IS HEREBY ORDERED that CS&B's motion for summary judgment on the cross-claims of Marathon and Frost is hereby granted. Defendant CS&B shall submit to the Court on or before August 16, 1976, a judgment, approved as to form by defendants Marathon and Frost.