**Vincent SPADOLA, Plaintiff,**

v.

**VIKING YACHT COMPANY, Defendant and Third-Party Plaintiff,**

v.

**JOHN W. McGRATH CORPORATION and Costa Line, Third-Party Defendants.**

No. 77 Civ. 1684.

United States District Court, S. D. New York.

Dec. 6, 1977.

Paul A. Gritz, Brooklyn, N.Y. (Martin L. Katz, Brooklyn, N.Y., of counsel), for plaintiff.

Sherwin Rear, Brooklyn, N.Y., Simon & White, New York City, for defendant and third-party plaintiff Viking.

Michael D. Martocci, New York City (Philip S. LaPenta, New York City, of counsel), for third-party defendant Costa Line.

James M. Leonard, McHugh, Heckman, Smith & Leonard, New York City, for third-party defendant, John W. McGrath Corp.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiff Vincent Spadola is a citizen and resident of New York. Defendant Viking Yacht Company is alleged to be a "domestic corporation," (Complaint, ¶ SECOND) having "a place of doing business at Route 9 and Bass River, New Gretna, New York" (Complaint, ¶ THIRD). Apparently, in fact it is a New Jersey corporation. By paragraph TENTH of the original complaint filed April 3, 1977, subject matter jurisdiction is said to be founded on 28 U.S.C. § 1332 (diversity) and § 1333 (admiralty and maritime).

The facts, for purposes of this motion, are not in dispute. Plaintiff is a longshoreman, who was, on May 2, 1975, employed at Pier 9, Brooklyn, New York by third-party defendant John W. McGrath Corporation ("McGrath"). McGrath was a stevedore retained at that time and place to load cargo aboard a vessel owned by third-party defendant Costa Line.

Part of the cargo being lifted by the Costa Line vessel through the services of McGrath as stevedore and Spadola as longshoreman, was a yacht. The yacht is not a "vessel" for purposes of this litigation, and in our treatment of the case we regard it no differently than a container filled with miscellaneous goods, a locomotive, or crate, box or bale of any kind of dry cargo. The defendant Viking Yacht Company ("Viking Yacht"), owner of the yacht, was a consignor or shipper of ocean freight. It had tendered the yacht to the Costa Line vessel for transportation as freight in foreign ocean commerce. To do this, Viking Yacht caused the yacht to be transported to the pier on its flat-bed truck, operated by its employee.

While Viking's motor truck was standing on the pier next to the Costa Line vessel, and while the Costa Line vessel's stevedore, McGrath, was engaged in lifting the yacht aboard its vessel to be carried as deck cargo, and while plaintiff Spadola was assisting in that stevedoring operation, Viking's truck was caused to move due to the

claimed negligence of the driver of the truck, Viking's employee or authorized operator. In the words of Paragraph SIXTH of the complaint, as amended, plaintiff alleges that "due to the negligence of the driver of said truck, plaintiff was caused to sustain severe and permanent injuries, through no fault on his part, but solely as a result of the negligence of [Viking Yacht's] employee." The truck ran over his foot.

It will be seen that the accident happened in the context of a stevedoring operation. Accordingly, Spadola has been or will be paid the Workmen's Compensation benefits required by the Longshoremen's & Harbor Workers' Compensation Act (LHWCA). That compensation was paid for by his employer, McGrath.

Insofar as concerns McGrath, the third-party complaint filed September 2, 1977 seeks indemnification or contribution. McGrath has now moved, pursuant to Rule 12(b), F.R.Civ.P., to dismiss on the ground that such action is "barred by § 905(b) of the LHWCA."

■ Clearly, this action arises out of a maritime tort, occurring on the pier or stringpiece, next to the vessel, in the course of a stevedoring operation. This is not an automobile accident case or a pedestrian knockdown. Federal law will apply. See 33 U.S.C. § 903(a).

■ Accordingly, we turn first to the claim for contribution alternatively pleaded against McGrath. It has been clear at least since *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 285, 72 S.Ct. 277, 96 L.Ed. 318 (1952) that there is no contribution among joint tortfeasors in the context of a maritime personal injury case, where the tortfeasor against whom the contribution is sought has paid compensation under the LHWCA. The *Halcyon* rule survived the 1972 amendments to the LWHCA, which do not deal with the issue. That *Halcyon* "was, and still is, good law on its facts" is the express holding in *Cooper Stevedoring Co., Inc. v. Fritz Kopke Inc.*, 417 U.S. 106, 115, 94 S.Ct. 2174, 2179, 40 L.Ed.2d 694 (1974). In *Cooper Stevedoring,*

the Supreme Court explained that in *Halcyon* no contribution could be required of Haenn because Haenn was the *employer* of the injured plaintiff, who had furnished compensation under the LHWCA. In *Cooper Stevedoring* the joint tortfeasor was not an employer. Accordingly, since the plaintiff could have sued the joint tortfeasor directly, and was not barred therefrom by the LHWCA, contribution was proper.

To the extent contribution is sought, the third-party complaint fails to state a claim against McGrath.

We turn now to the question of indemnity. Although Viking Yacht's pleading is unclear, apparently no express contract of indemnity exists between McGrath and the numerous consignors of freight. Presumably Viking Yacht relies on an implied warranty of workmanlike service given to the Costa Line vessel, recognized in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and its progeny, of which all injured persons on the vessel or pier are either "third-party beneficiaries," or able to sue absent any privity, or intention on the part of Costa or McGrath that they benefit thereby.

This leads us directly to the construction to be placed upon the 1972 amendment to § 5(b) of the LHWCA [33 U.S.C. § 905(b)]. That amendment reads in relevant part as follows:

"In the event of injury to a person covered under this chapter caused by the negligence of a <u>vessel</u>, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such <u>vessel</u> as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the <u>vessel</u> for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the <u>vessel</u> to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in provid-

ing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." (Underlining added.)

■ Must the references in that remedial statute to "vessel" and vessel owner be read literally? Or should we read the statute in light of the evil it sought to remedy? The statutory purpose was expressed by the Court of Appeals in *Munoz v. Flota Mercante Grancolombiana, S.A.*, 553 F.2d 837, 840 (2d Cir. 1977):

"The amended Act is a paradigm of political compromise. Injured workers would enjoy significant improvement in the level of benefits. The stevedore-employer, now rid of the yoke of indemnification suits, would be induced to insure employee safety by increased compensation awards. Shipowners no longer could be held under the rubric of unseaworthiness—a euphemism for absolute liability—for injuries suffered onboard the ship by harbor workers."

Here, the old circuity of action based on indemnification and sought to be stamped out by the 1972 amendment, is said to remain available simply because, in the context of this stevedoring operation, the action for negligence is not against a "vessel," but rather against a motor truck, its owner and operator. Defendant and third-party plaintiff, Viking Yacht relies on *Gould v. General Mills, Inc.*, 411 F.Supp. 1181 (W.D. N.Y.1976) and *Brkaric v. Star Iron and Steel Co.*, 409 F.Supp. 516, 520 (E.D.N.Y. 1976), and *Zapico v. Bucyrus-Erie Co.*, 434 F.Supp. 567 (S.D.N.Y.1977).

We begin with the initial observation that we must focus on the evil which the 1972 reform legislation was intended to stamp out.

The disruptive effect of third party suits on the compensation scheme provided by the Act is described with clarity in *Lucas v. "Brinknes" Schiffahrts Ges.*, 379 F.Supp. 759, 767 (E.D.Pa.1974). There, Judge Huyett held:

"It was understood by the members of Congress most directly involved in amending the Act that in allowing for any third-party suits Congress ran the risk that liability would eventually be visited on the employer. It was deemed essential that clear amending language be used to prevent such an occurrence. The process by which a consensus was reached to allow for a third-party suit against the vessel for its negligence illustrates Congress' paramount concern that the employer's liability under the Act to his employee must be insulated and was intended to be insulated by the emphatic language of amended subsection 5(b), 33 U.S.C. § 905(b).

In addition to the bills introduced in each house of Congress designed to increase compensation benefits and for other purposes, H.R. 3505 and S. 525 sought specifically to deal with third-party suits. Both these bills had the support of the shipowner and stevedore industry. Both proposed to eliminate completely third-party suits against the vessel. They would accomplish this result by defining the vessel as the longshoreman's employer even though the longshoreman may not have been directly employed by the vessel when injured. Labor interests, while desirous of effecting a raise in compensation benefits, were opposed to a complete elimination of third-party suits.

Allowance of a suit for negligence was seen as a practical compromise which would lessen the industry's opposition to increased benefits and still provide some remedy against the vessel when it was at fault in causing the longshoreman's injuries. In providing for the third-party suit against the vessel for its negligence, Congress perceived that it was eliminating

the large number of cases in which the vessel was held liable without fault pursuant to the doctrine of seaworthiness. This perception was based on the assumption that the negligence remedy provided would be similar to the common law concept based on fault and not any maritime negligence concept in which the vessel owed some special duty to provide the longshoreman a safe place to work. Narrowing the scope of the vessel's duty with regard to safety to that of a common law fault duty was designed to eliminate as much as possible the unfairness to the vessel caused by the seaworthiness doctrine while still providing some remedy for the vessel's actions in causing the longshoreman to be injured. At the same time, however, Congress expressed its concern that the stevedore employer would not be held liable for any damages caused by the vessel owner's negligence.

This overriding concern to insulate the employer was clearly presented in both the House and Senate hearings held on the various bills introduced. The testimony given by Francis A. Scanlan, Esquire in both houses of Congress presented most sharply the limits of the compromise solution allowing for a common law negligence suit against the vessel with insulation from liability to the employer-stevedore. Mr. Scanlan testified in favor of the bills eliminating the third-party actions. But in response to subcommittee members' questions concerning a common law negligence suit against the vessel, he indicated approval of such an approach so long as the liability was based on the vessel's fault and the stevedore would be insulated from liability. There appeared to be a consensus among the subcommittee members to such an approach.

The discussions in the Senate hearings illustrate Congress' objective of narrowing the liability of the shipowner to situations involving fault while insulating the stevedore from liability."

Enactment of § 905(b), and abrogation of the *Ryan-Sieracki* doctrine restored vitality to the language, always contained in old § 905, and continued in § 905(a), that:

"Exclusiveness of liability.

(a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . ." (Underlining added).

[6] Accordingly, since no contribution can be obtained under *Halcyon*, and since the vessel under § 905(b) cannot longer *agree* to indemnity from a stevedore, and § 905(a) makes the stevedore's liability exclusive, it follows that no third party claim of any kind can be asserted in circumstances such as are here present.

A case so holding, on analogous facts is *S.S. Seatrain Louisiana v. California Stevedore & Co.*, 424 F.Supp. 180, 183 (N.D.Cal. 1976). There, the Court held:

"While the Amendments, the legislative history, and case authority are clear that no indemnity action against the stevedore may be brought by the vessel, the statute and the legislative comments do not specifically address the question raised here: whether an indemnity action against the stevedore may still be brought by third parties. However, whereas here, there is no actual contract of indemnity between the stevedore and the third party, [footnote omitted] the third parties cannot claim to be third-party beneficiaries of a contractual warranty of workmanlike performance running to the vessel since subsequent to the Amendments it is perfectly clear no such underlying warranty exists. At best, they are third-party beneficiaries to a nullity."

\*      \*      \*      \*      \*      \*

In addition, permitting the sought indemnification would run *contra* to the purposes of the Amendments. Congress specifically intended to cut off circuitous indemnity litigation and to make the compensation payments under the Act

the exclusive liability of the employer. Permitting this cross-claim would once again open the door to the very type of actions Congress was trying to avoid." See also, *Fitzgerald v. Compania Naviera La Molinera*, 394 F.Supp. 402 (E.D.La.1974). To the extent that Viking Yacht's cases relied on, *supra*, pp. 5, 6, are inconsistent with the rationale of the foregoing, and they are, this Court declines to follow them.

The full economic burden which would be imposed on our maritime industry by any contrary holding is readily apparent when we consider that if Spadola recovers a judgment against Viking Yacht, and Viking Yacht recovers *indemnity* against McGrath, the sole beneficiary will be Spadola and his lawyers. Any recovery by Spadola against Viking Yacht must, net of Spadola's legal fees, be paid to McGrath's insurer in satisfaction of the lien for compensation benefits. If the lien for compensation is fully discharged and additional money remains, the net result will be that McGrath will have paid Spadola more money than the scheduled compensation award for his injury, and Viking, whose truck passed over plaintiff's foot, causing the injury, would escape scot-free. Such a readily apparent absurdity is not to be brought into existence by placing too literal a construction on the word "vessel" in the 1972 amendments to the LHWCA.

Since it appears that Viking Yacht is not entitled to *contribution* from McGrath under the *Halcyon* exception preserved in *Cooper Stevedoring*, discussed *supra*, and that a fair construction of the 1972 amendments precludes *indemnity* under a vestigial *Ryan-Sieracki* theory, it is appropriate to grant McGrath's motion to dismiss the third-party complaint as to it.

Heretofore, for independent reasons set forth in the transcript of a hearing held before me on November 23, 1977, the third-party complaint was dismissed with prejudice as against Costa Lines which was directed to submit a Final Judgment, which awaits signature. Thereafter, at the hearing held November 30, 1977, an additional ground for such dismissal developed, when it was disclosed that there was no factual basis to support any claim of negligence by the Costa Line ship. See Rule 11, F.R.Civ.P.

As to McGrath, there is also no just cause for delay, and a separate judgment should enter under Rule 54(b), F.R.Civ.P. Indeed, were our conclusion as to the legal issue involved other than as set forth above, we would certify under 28 U.S.C. § 1292(b) because of the fact that resolution of the question would "materially advance" this litigation.

A Final Judgment has been signed dismissing the third-party complaint as to Costa Lines and McGrath.

So Ordered.