Donald BROWN, Plaintiff,

v.

PETER HAHN GMBH,
et al., Defendants.

No. Civ.A. 2:97cv117.

United States District Court,
E.D. Virginia,
Norfolk Division.

March 27, 2000.

Stevan C. Dittman, Gainsburgh, Benjamin, David, Meunier, Noriea & Warshauer, New Orleans, LA, Jesse Marden Suit, III, Kalfus & Nachman, Norfolk, VA, for Donald Brown, plaintiff.

John Robert Crumpler, Jr., Kaufman & Canoles, Norfolk, VA, Rice Arthur Jett, Jr., McGuire, Woods, Battle & Boothe, Norfolk, VA, Charles Felician Lozes, Kevin J. LaVie, Terriberry, Carroll & Yancey,

New Orleans, LA, for Peter Hahn GmbH, Lykes Bros. S.S. Co., Inc. and Lykes Bros. Tort Claims Trust, defendants.

Robert William Hardy, Clarke, Dolph, Rapaport, Hardy & Hull, PLC, Norfolk, VA, for Gibbs AgBFTextilmachinen and Gibbs Intern., Inc., defendants.

John Robert Crumpler, Jr., Kaufman & Canoles, Norfolk, VA, for Lykes Bros. Tort Claims Trust, defendant.

Richard John Barrett, Vandeventer, Black, Meredith & Martin, Norfolk, VA, John Morgan Ryan, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for Virginia Intern., Terminals, Inc., third-party defendant.

## ORDER AND OPINION

DOUMAR, District Judge.

This is a personal injury action brought under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.* Presently before the Court are two motions for summary judgment. The first motion is that of defendant and third-party plaintiff Lykes Brothers Tort Claims Trust ("Lykes") for partial summary judgment against Plaintiff Donald Brown ("Brown"). The second motion is a motion for summary judgment brought by third-party defendant Virginia International Terminals ("VIT") against Lykes' third-party complaint. For the reasons set forth below, the Court **GRANTS** Lykes motion for partial summary judgment and **GRANTS** VIT's motion for summary judgment as well.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a longshoreman working at Virginia International Terminals, filed this action to recover for personal injuries he incurred as a result of a vehicular accident he was involved in on the premises of VIT on March 10, 1995. Plaintiff claims that as a result of defendants' negligence, he was injured while transporting a container carrying textile machinery. Specifically, Plaintiff claims that sometime prior to March 1995, Wayn–Tex Inc., a Virginia corporation, was looking to purchase some textile machinery. Accordingly, defendants Gibbs AG Textilmachinen ("Gibbs AG"), Gibbs International, Inc. ("Gibbs International"), and Peter Hahn GMBH ("Hahn"), all foreign corporations, and Lykes Brothers Steamship Company[1] ("Lykes"), a Louisiana corporation, arranged the purchase, packing, transport, and delivery of some textile machinery from Bramerhaven, Germany to Norfolk, Virginia. According to Plaintiff, Gibbs AG and Gibbs International ordered Hahn to load and secure the textile machinery into a container for shipment, and then ordered Lykes to ship the container to Norfolk. Lykes shipped the textile machinery in container number TRIU4536859 to Norfolk aboard the vessel M.S. ADABELLE LYKES. On or about March 10, 1995, the M.S. ADABELLE LYKES unloaded the container at Virginia International Terminals in Norfolk and placed it onto a Lykes chassis for transport within the terminal. Later that same day, while Plaintiff was using a small tractor to move the container and chassis, the container and chassis together tipped over to the right side, causing the front end of the tractor Plaintiff was using to flip upward and then fall heavily to the ground, injuring Plaintiff. According to Plaintiff, the accident occurred when the locking devices at the front end of the chassis disengaged from the container front-end corner castings.

Plaintiff received compensation for his injuries from his employer, VIT, pursuant to the LHWCA. Plaintiff now seeks to recover damages from defendants under the LHWCA, the general maritime laws of the United States, and the laws of the Commonwealth of Virginia. Plaintiff claims that Lykes was negligent because it

---

1. Lykes Bros. Tort Claims Trust is a tort claims trust formed as a result of the bankruptcy of Lykes Brothers Steamship Company, Inc. Throughout this order, Lykes Broth- ers Steamship Company, Inc. and Lykes Bros. Tort Claims Trust will be referred to collec- tively as "Lykes."

provided a chassis which was defective in that the left side of the chassis retaining pin lever retaining handle was bent inboard, resulting in the retaining pin not being fully extended when locked into place. Plaintiff also claims that Hahn, Gibbs AG, and Gibbs International were negligent in failing to properly load and secure the container, in that the container was loaded and secured so that it was off-center and leaning to the right. Plaintiff further claims that Gibbs AG and Gibbs International failed in their duty to properly hire competent labor to load, secure, and ship the textile machinery, and in failing to properly instruct and supervise the loading, securing, and shipping of the machinery. Finally, Plaintiff claims Lykes was negligent in failing to properly inspect the container and warn of its dangerous condition when it was unloaded in Norfolk.

Plaintiff filed his Complaint in the United States District Court for the Eastern District of Louisiana on March 6, 1996. Pursuant to 28 U.S.C. § 1404(a), the case was transferred to this Court on January 15, 1997. On January 11, 2000, Lykes filed a Third–Party Complaint against Plaintiff's employer, VIT. In its Third–Party Complaint, Lykes alleged that when the container in question was placed on the Lykes chassis after being unloaded in Norfolk, it was locked and secured by a VIT employee. Lykes contends that if it is liable to Plaintiff for providing improper chassis equipment, then VIT is liable to Lykes in indemnity, or in the alternative, contribution, for its employee's negligent failure to observe that the locking pin did not fully extend, and/or it's employee's negligent failure to properly insert the locking pin on the chassis into the container. Lykes also contends that if it is liable to Plaintiff, then VIT is liable to Lykes for breach of contract and breach of warranty of workmanlike service.

On February 4, 2000, Lykes filed a Motion for Summary Judgment[2] against Plaintiff in which it argues that it is enti-

tled to judgment as a matter of law on Plaintiff's claim that it violated a duty to warn Plaintiff that the container in question was misstowed. On March 6, 2000, VIT filed a Motion for Summary Judgment in which it argues that because VIT paid Plaintiff compensation for his injuries pursuant to the LHWCA, the exclusivity provision of the LHWCA bars Lykes from obtaining indemnity or contribution from VIT. The Court heard argument on Lykes' and VIT's motions on March 22, 2000.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate only when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the court must view the underlying facts in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Corp., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The moving party has the threshold burden of informing the court of the basis of the motion and of establishing, based on relevant "portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Catawba Indian Tribe v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992). Once the moving party satisfies this threshold showing under Rule 56(c), the burden of production, not persuasion, shifts to the non-moving party. The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by 'depositions, an-

**2.** Lykes motion is really one for partial summary judgment, as it does not address Plain-

tiff's claim that Lykes was negligent in supplying a defective chassis.

swers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e); *Catawba Indian Tribe*, 978 F.2d at 1339. In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. To prevent entry of summary judgment for the movant, the non-moving party must demonstrate that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.; see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

## B. Lykes Motion for Partial Summary Judgment

Plaintiff has raised two claims against Lykes: (1) that Lykes was negligent in providing a defective chassis; and (2) that Lykes was negligent in failing to warn about the dangerous condition of the container in question when the container was unloaded in Norfolk. Lykes has moved for summary judgment with regard to Plaintiff's second claim concerning negligent failure to warn of the condition of the container.

Plaintiff's claim against Lykes for negligent failure to warn arises under § 905(b) of the LHWCA, which provides in pertinent part:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third-party in accordance with the provisions of section 933 of this title.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be ex-

clusive of all other remedies against the vessel except remedies available under this chapter.

■ The standard for negligence in the present case was articulated by the Supreme Court in *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). There, the Court stated:

This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.

*Id.* at 166–67, 101 S.Ct. 1614 (citing *Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 416 n. 18, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969)). The Court further stated that:

We are of the view that absent contract provision, positive law, or custom to the contrary ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the · confines of the cargo operations that are assigned to the stevedore. The necessary consequences that the ship owner is not liable to the longshoremen for injuries caused by danger unknown to the owner and about which he had no duty to inform himself.... The shipowner, within limits, is entitled to rely on the stevedore, and owes no duty to the longshoremen to

inspect or supervise the cargo operations.

*Id.* at 172, 101 S.Ct. 1614, 101 S.Ct. at 1624. In *Howlett v. Birkdale Shipping Co., S.A.,* 512 U.S. 92, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994) the Court stated:

> [T]he vessel's turnover duty to warn of latent defects in the cargo stow and cargo area is a narrow one. The duty attaches only to latent hazards, defined as hazards that are not known to the stevedore and that would be neither obvious to nor anticipated by a skilled stevedore in the competent performance of its work. . . . Furthermore, the duty encompasses only those hazards that 'are known to the vessel or should be known to it in the exercise of reasonable care'. . . . [T]he exercise of reasonable care does not require the shipowner to supervise the ongoing operations of the loading stevedore (or other stevedores who handle the cargo before its arrival in port) or to inspect the completed stow.

*Id.* at 105, 114 S.Ct. at 2066 (citing *Scindia Steam,* 451 U.S. at 167, 101 S.Ct. at 1622). Thus, a vessel is only liable to a longshoreman for injuries caused by dangers the vessel knew about, or had a duty to discover, and did not warn about.

■ Plaintiff has put forth no facts which would indicate any negligence on the part of Lykes with regard to the condition of the container. Plaintiff argues that Lykes did have actual or constructive knowledge that the container involved in the accident had or potentially had problems with stowage. In support of this claim, Plaintiff points to the bill of lading which contains the following language: "Shipper responsible for securing cargo in such a way as to safely reach Waynesboro. See B/L Clause 8." Plaintiff argues that this language is evidence that Lykes knew of a dangerous cargo condition and failed to take action. However, as Lykes notes in its reply brief, the shipper as defined in the bill of lading cited by Plaintiff is Gibbs AG, not Lykes. Moreover, a fair reading of the provision on the bill of lading does not suggest that Lykes knew that the container might be improperly stowed or stuffed. Besides the bill of lading, there is no additional evidence showing that Lykes considered the container in question to be in a dangerous condition and in need of special handling at the time it was unloaded in Norfolk, nor is there any additional evidence showing that the shipper had informed Lykes of any special conditions or requirements with regard to the container. A reasonable jury could not find that Lykes had actual or constructive knowledge of the container's condition based on the language of the bill of lading alone.

■ Plaintiff further argues that even if Lykes did not have actual or constructive knowledge of the dangerous condition of the container, Lykes had a duty to inspect the cargo for dangerous conditions resulting from the work of the loading stevedores. However, at least one district court in this circuit has held there is no such duty. In *Reechel v. Italia DiNavigazione Societa,* 690 F.Supp. 438 (D.Md.1988), the estate of an employee of a stevedoring company sued the owner of a vessel for failure to warn of the dangerous, top-heavy condition of a container which had been unloaded from the vessel. The condition of the container caused the decedent's hustler to jackknife as he was attempting to move the container. The district court awarded summary judgment because the Plaintiff failed to offer any evidence tending to show that the shipping company should have known or had actual or constructive knowledge that the container was top heavy. *See id.* at 442. The defendants in *Reechel* had agreed in their shipping contract to "inspect the stowage of containers to ensure the adequacy of stowage prior to the vessel's departure." *Id.* at 443. However, the court found that shipping contract language could not be read to require the defendants "to inspect the stuffing of a container performed by the shipper prior to the time that defendants, as the carrier, received it for carriage." *Id.* The court stated:

[Plaintiff] contends that the defendant shipowners had a duty to make inquiry about the load or to inspect the contents of the containers. We conclude today that in the absence of knowledge or in the absence of any such circumstances that would reasonably put the shipowner on notice, the shipowner has no duty to inquire about specific containers or undertake to inspect the contents of sealed containers. Accordingly, [the defendant shipping company] [is] entitled to judgment as a matter of law.

*Reechel,* 690 F.Supp. at 444. This Court agrees with the reasoning of the court in *Reechel.* There is no duty of a vessel such as Lykes to inquire about specific containers, nor is there a duty to open and inspect the contents of every container a vessel transports in order to discover hidden dangers. At some point, a vessel transporting a container must be permitted to rely on the expertise of those who actually stuffed and sealed the container.

Since Plaintiff has not offered any evidence other than the bill of lading in support of its claim that Lykes had actual or constructive knowledge of the condition of the container, and because Lykes had no duty to inquire about or open the container in order to discover its dangerous condition, Plaintiff has failed to make a showing sufficient to establish the existence of Lykes' negligence under *Scindia Steam.* There is no genuine issue for trial and Lykes is entitled to judgment as a matter of law. Accordingly, Lykes motion for summary judgment is granted with regard to Plaintiff's negligent failure to warn claim.

**C. Third–Party Defendant VIT's Motion for Summary Judgment Against Third–Party Plaintiff Lykes**

■ Third-party defendant VIT, Plaintiff's employer, has filed a motion for summary judgment against Lykes' third-party complaint. In its third-party complaint, Lykes alleges that when the container in question was placed on the Lykes chassis, it was locked and secured by a VIT employee. Lykes contends that if it is liable to Plaintiff for providing improper chassis equipment, then VIT is liable to Lykes in indemnity, or in the alternative, contribution, for its employee's negligent failure to observe that the locking pin did not fully extend, and/or it's employee's negligent failure to properly insert the locking pin on the chassis into the container. Lykes also contends that if it is liable to Plaintiff, then VIT is liable to Lykes for breach of contract and breach of warranty of workmanlike service. VIT contends that because it paid compensation to Plaintiff for his injuries pursuant to the LHWCA, Lykes recovery against VIT is barred by the exclusivity provision of the LHWCA.

Section 905(a) of the LHWCA provides in pertinent part:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death....

33 U.S.C. § 905(a). Section 905(b) provides that "the employer shall not be liable to the vessel ... for damages directly or indirectly and any agreements or warranties to the contrary shall be void." Together, sections 905(a) and 905(b) operate to prevent vessels from recovering under contribution or indemnity principles, as well as under contractual theories such as the implied warranty of workmanlike service, from employers who have paid injured longshoremen compensation under the LHWCA. In an effort to avoid the exclusivity provisions of the LHWCA, Lykes argues that with regard to the claim for which it seeks to contribution or indemnity, i.e., its negligent supply of a defective chassis, it was not acting as a "vessel" within the meaning of the LHWCA and thus, the LHWCA exclusivity provisions do not apply to bar its third-party claim against VIT.

Section 902(21) of the LHWCA defines "vessel" as "any vessel upon which *or in connection with* which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment . . ." (emphasis added). Lykes argues that in supplying the allegedly defective chassis, it was not acting as a vessel but was instead acting as a terminal operator or terminal chassis owner. The Court does not find this distinction persuasive. First, the Court notes that the term "vessel" in the LHWCA is not to be read literally, but is instead to be interpreted in light of the evil the LHWCA sought to remedy. *See Spadola v. Viking Yacht Co.,* 441 F.Supp. 798, 801 (S.D.N.Y. 1977). The purpose of the exclusivity provisions of the LHWCA was expressed by the Second Circuit in *Munoz v. Flota Merchante Grancolombiana, S.A.,* 553 F.2d 837, 840 (2d Cir.1977):

> The amended Act is a paradigm of political compromise. Injured workers would enjoy significant improvement in the level of benefits. The stevedore-employer, now rid of the yoke of indemnification suits, would be induced to insure employee safety by increased compensation awards. Shipowners no longer could be held under the rubric of seaworthiness a euphemism for absolute liability for injuries suffered onboard the ship for harbor workers.

Thus, in exchange for making increased compensation payments to injured employees, employers received relief from the circuitous litigation arising from indemnification suits born out of accidents covered by the LHWCA. Accordingly, the definition of "vessel" should be interpreted in a manner which is consistent with discouraging this "round-robin" form of litigation. *See Spadola,* 441 F.Supp. at 801.

The Court finds that in this case Lykes was acting as vessel within the meaning of the LHWCA in providing the allegedly defective chassis. When the container in question was unloaded from the M.S. ADABELLE LYKES in Norfolk, it was placed directly on the Lykes chassis. The chassis was to be used to move the container around the terminal so that the container could be further transported to its final destination. Without question, the use of the chassis was "in connection with" the unloading of the vessel, and thus, within the statutory confines of § 902(21) of the LHWCA. Accordingly, since Lykes was acting as a vessel with regard to Plaintiff's claim concerning the allegedly defective chassis, and because VIT has compensated Plaintiff for his injuries pursuant to the LHWCA, Lykes' third-party claim for contribution, indemnity or contractual relief against VIT is barred by the exclusivity provision of § 905. Therefore, VIT is entitled to judgment as a matter of law and its motion for summary judgment is granted.

Although the Court bases its decision on Lykes' status as a "vessel" under the LHWCA, the Court notes that even if Lykes' were held to be a nonvessel for purposes of its third-party complaint, recovery against VIT would still be difficult and perhaps unlikely. That is because according to most circuit courts, under § 905(b) even a nonvessel is barred from pursuing an action for indemnity or contribution against an employer based on tort. Several circuits have held that the "on account of" language of § 905(a) precludes a nonvessel, against which a negligence action is brought by an employee, from obtaining indemnity from a concurrently negligent employer. *See Ketchum v. Gulf Oil Corp.,* 798 F.2d 159, 161 (5th Cir.1986) ("[s]ince 1967 it has been the position of this Court that the LHWCA's exclusive liability provision effectively abrogates any independent tort liability of the employer to its employees, thereby eliminating any basis which may have existed for indemnification [of the third-party plaintiff] on a tort theory"); *Drake v. Raymark Indus., Inc.,* 772 F.2d 1007 (1st Cir.1985); *Zapico v. Bucyrus–Erie Co.,* 579 F.2d 714, 717 (2d Cir.1978). *See also Oman v. Johns–Manville Corp.,* 482 F.Supp. 1060, 1071 (E.D.Va.1980) ("although the 1972 amendments to the LHWCA, which prohibit shipowners from recovering indemnity

from stevedore-employers, did not expressly extend to all third-party indemnity or contribution claims, they clearly illustrate that Congress foresaw these hazards in the circularity engendered by allowing such recovery)," *aff'd, White v. Johns–Manville Corp.*, 662 F.2d 243 (4th Cir. 1981).

Whether an action based on the breach of an implied contract or the warranty of workmanlike service could be maintained by a nonvessel against an LHWCA employer appears to be a more uncertain question. Arguably the language of § 905(b) could be read to preclude such actions as well. In fact, the decisions of several courts which have considered the issue would appear to leave the viability of such an action by a nonvessel in doubt. *See Spadola*, 441 F.Supp. at 802; *S.S. Seatrain Louisiana v. California Stevedore & Ballast Co.*, 424 F.Supp. 180 (N.D.Cal.1976); *Fitzgerald v. Compania Naviera La Molinera*, 394 F.Supp. 402 (E.D.La.1974).

### III. *CONCLUSION*

For the reasons stated above, Lykes' motion for partial summary judgment against Plaintiff is **GRANTED.** In addition, third-party defendant VIT's motion for summary judgment is also **GRANTED.**

The Clerk is DIRECTED to forward a copy of this Order and Opinion to all counsel of record.

**IT IS SO ORDERED.**