483 F.2d 184
 Hullon DAVIS, Plaintiff-Appellant,
v.
CHAS. KURZ & CO., INC., and Northwest Marine Iron Works,
Defendants-Appellees.
NORTHWEST MARINE IRON WORKS, Third Party Plaintiff-Appellee,
v.
PACIFIC MARINE SERVICE, Third Party Defendant-Appellee (two cases).
Hullon DAVIS, Plaintiff-Appellee,
v.
CHAS. KURZ & CO., INC., et al., Defendants-Appellees (two cases).
NORTHWEST MARINE IRON WORKS, Third Party Plaintiff-Appellant,
v.
PACIFIC MARINE SERVICE, Third Party Defendant-Appellee.
Hullon DAVIS, Plaintiff-Appellee,
v.
CHAS. KURZ & CO., INC., et al., Defendant-Appellant.
NORTHWEST MARINE IRON WORKS, Third Party Plaintiff-Appellee,
v.
PACIFIC MARINE SERVICE, Third Party Defendant-Appellant.
 Nos. 71-1168 through 71-1171.
 United States Court of Appeals,
Ninth Circuit.
 July 20, 1973.
 
 Edwin A. York (argued), Charles Paulson, Portland, Ore., for plaintiff-appellant.
 Jack L. Kennedy (argued), Portland, Ore., John G. Holden (argued), of Wood, Wood, Tatum, Mosser & Brooke, Portland, Ore., Jerald S. Weigler (argued), of Lindsay, Nahstoll, Hart, Duncan, Dafoe & Krause, Portland, Ore., Richard L. Lang, of McMenamin, Jones, Joseph & Lang, Portland, Ore., Dennis W. Skarstad, Portland, Ore., for defendants-appellees.
 Before BARNES and DUNIWAY, Circuit Judges, and BATTIN,* District Judge.
 DUNIWAY, Circuit Judge:
 
 
 1
 On March 30, 1968, appellant Davis was injured as he entered a hatch on board the vessel Julesburg. The vessel was at the time in the Portland, Oregon, Swan Island Ship Repair Facility undergoing substantial repairs, and was not in navigation. The owner of the vessel, Charles Kurz & Co. (Kurz) had contracted the repair work to Northwest Marine Iron Works (Northwest) which had in turn subcontracted the job of sandblasting the forepeak tank to Pacific Marine Iron Works, Inc. (Pacific). Davis was a shore-based employee of Pacific. At the time that he was injured, he was attempting to descend into the forepeak tank. The hatch cover, which had been leaning against a bulkhead, fell on top of him, causing the injuries.
 
 
 2
 Davis brought suit against Kurz and Northwest, alleging negligence as to both, and also alleging breach of the warranty of seaworthiness against Kurz. Section 5 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 901 et seq., under which Davis received compensation from his employer Pacific, was a bar to further action against Pacific. 33 U.S.C. Sec. 905.
 
 
 3
 Northwest impleaded Pacific for indemnity, and cross-claimed against Kurz for indemnity. Before the impleader, Kurz had brought an action seeking indemnity against Northwest and Pacific for breach of a common law warranty of good workmanship, and against Northwest alone for breach of an express contract between Kurz and Northwest. Pacific cross-claimed against both Kurz and Northwest for indemnity and for negligence. The actions were consolidated.
 
 
 4
 The case was tried before the court without a jury. The court found that only Pacific had been negligent, and that its negligence had been the proximate cause of the injury to Davis. From this finding Pacific appeals. Davis appeals from the finding that neither Kurz nor Northwest was negligent. The court also found that the vessel was a "dead ship" and that no warranty of seaworthiness was owed to Davis by Kurz. Davies does not appeal this finding. The court next held that as between Kurz and Northwest, Kurz was entitled to indemnity for expenses incurred in defending the action, on the basis of provisions of the express contract between Kurz and Northwest. Northwest does not challenge this ruling, but argues that should this court find Kurz negligent, Kurz should not then be entitled to indemnity against Northwest by virtue of the contract. Kurz's position is that if this ruling should be disturbed on appeal, it still is entitled to indemnity from Northwest by virtue of an implied warranty of good workmanship. The court held further that neither Kurz nor Northwest was entitled to indemnity from Pacific. Northwest appeals this ruling. Kurz contends, again as a protective matter, that should the district court's holding that it is entitled to indemnity from Northwest be overturned, it is entitled to indemnity from Pacific. Finally, Kurz appeals the award of defense fees ($3,000) as indemnity from Northwest, contending the sum is too low.[1] We affirm the holdings of the trial court in all respects.
 
 
 5
 1. Davis urges us to overturn the court's finding that Northwest and Kurz were free from negligence. Pacific urges us to overturn the related finding that it was negligent and that its negligence was the proximate cause of the injuries. The court found that Pacific, by running four electric cords for the operation of the sandblasting machines by and around the hatch cover, and through the escape hatch into the forepeak tank, made the hatch unreasonably dangerous. The court found that pressure on one or more of the cords caused the hatch cover to fall and to strike Davis. Both parties argue, as they must, that the pertinent findings are "clearly erroneous," Rule 52 F.R. Civ.P. Having reviewed the record, we are not left with "the definite and firm conviction that a mistake has been committed," United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 726. See Luttrell v. United States, 9 Cir., 1970, 423 F.2d 1197, cert. denied, 400 U.S. 915, 91 S.Ct. 173, 27 L.Ed.2d 154.
 
 
 6
 2. We next consider Northwest's claim that it is entitled to indemnity against Pacific for expenses incurred by Northwest in defending against Davis' suit.
 
 
 7
 Northwest asserts two theories of recovery. The first is that an implied warranty of workmanlike service runs from the subcontractor Pacific to the general contractor Northwest, that Pacific breached the warranty, and that Northwest is accordingly entitled to indemnification. We see no reason to imply the existence of such a warranty running from Pacific to Northwest. The leading case of Ryan Stevedoring Co., Inc. v. Pan-Atlantic S. S., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, established that a stevedoring contractor who enters into a service agreement with a shipowner is liable to indemnify the owner for damages sustained as a result of the stevedore's causing the ship to be unseaworthy. The Court held that a warranty of workmanlike service ran from the stevedoring company to the shipowner, and that such a warranty amounted to an agreement to hold the shipowner harmless. This doctrine has been expanded somewhat by subsequent decisions. See Italia Societa v. Oregon Stevedoring Co., Inc., 1964, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732; Waterman S. S. Corp. v. Dugan & McNamara, Inc., 1960, 364 U.S. 421, 81 S.Ct. 200, 5 L. Ed.2d 169; Crumady v. The J. H. Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.E.2d 413; Weyerhaeuser S. S. Co. v. Nacirema Operating Co., Inc., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491. The rationale underlying Ryan and the later cases is that when a shipowner owes a duty of seaworthiness to an injured party (and consequently its liability is not dependent on a finding of its fault) a corresponding duty of indemnity should devolve upon a stevedore whose failure to perform with reasonable safety caused the injury. See Italia Societa v. Oregon Stevedoring Co., Inc., supra, 376 U.S. at 324, 84 S.Ct. 748; Schwartz v. Compagnie General Transat-lantique, 2 Cir., 1968, 405 F.2d 270; Loffland Bros. Co. v. Roberts, 5 Cir., 1967, 386 F.2d 540; DeGioia v. United States Lines Co., 2 Cir., 1962, 304 F.2d 421.
 
 
 8
 Northwest argues that the existence of the warranty does not depend on a corresponding existence of a duty of seaworthiness. We think that it does. The circumstance which gives rise to the implied warranty is the duty of seaworthiness owed by the party seeking indemnification. See Italia Societa v. Oregon Stevedoring Co., Inc., supra, 376 U.S. at 323-324, 84 S.Ct. 748; DeGioia v. United States Lines Co., supra, 304 F.2d at 426. That circumstance is not present here. The district court found that there was no duty of seaworthiness owed to Davis. In any event, such a duty would be owed to Davis by Kurz, not Northwest.
 
 
 9
 Northwest's second argument is that it is entitled to indemnity by virtue of its contract with Pacific. Northwest argues that Pacific violated a duty owed directly to Northwest to exercise reasonable care to avoid foreseeable harm to Northwest arising from injuries to Pacific's employees. However, the rule in this circuit is that in the absence of a contractual indemnity agreement, express or implied, between the party suing and the party protected by an exclusive liability provision such as Sec. 5 of the Longshoremen's and Harbor Workers' Act, the former may not recover indemnity from the latter. Wien Alaska Airlines, Inc. v. United States, 9 Cir., 1967, 375 F.2d 736; United Air Lines, Inc. v. Wiener, 9 Cir., 1964, 335 F.2d 379, 403. Northwest directs our attention to no such express contractual agreement. And as noted in our discussion above, Ryan does not require that one be implied. See also Grace Lines, Inc. v. Central Gulf S.S. Corp., 5 Cir., 1969, 416 F.2d 977.
 
 
 10
 3. Northwest does not challenge the district court's ruling that Kurz is entitled on the basis of the express contract between them to indemnify for its expenses incurred in defending the suit. Rather, its position on this question is that if this court should find the shipowner Kurz to have been negligent, no indemnity should be owing from Northwest to Kurz. We need not reach this question because we affirm the court's finding that Kurz was not negligent. Neither need we reach Kurz's alternate contentions that it is in any event entitled to indemnity from Northwest by virtue of an implied warranty of good workmanship, or that it is entitled to indemnity from Pacific.
 
 
 11
 4. We come last to Kurz's claim that the defense fees awarded it as indemnity from Northwest were too low. The court awarded fees of $3,000; Kurz claims that a figure of $7,500 is proper. The conflict stemmed from the inability of Kurz's attorneys to separate the hours spent on defense efforts from those spent on the indemnity question. In such circumstances we cannot say that the district court abused its discretion in setting the fees at $3,000. See Arico v. Cie. De Navegacion Transoceanique, 2 Cir., 1969, 409 F.2d 1002.
 
 
 12
 Affirmed.
 
 
 
 *
 The Honorable James F. Battin, United States District Judge, District of Montana, sitting by designation