[Civ. No. 53621. Second Dist., Div. One. July 31, 1978.]

IT CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
CLARENCE E. FROST, Real Party in Interest.

444

## COUNSEL

Ball, Hunt, Hart, Brown & Baerwitz, Rodi, Pettker, Galbraith & Phillips, Thomas P. Phillips and Jamie A. Chuck for Petitioner.

No appearance for Respondent.

Overton, Lyman & Price and Dean M. Harris for Real Party in Interest.

## OPINION

**THOMPSON, J.**—This petition for writ of mandate involves the right under federal maritime law of a person sued for negligently inflicted personal injury to recover indemnity from the employer of the injured person, where the employer has fully satisfied the obligation imposed upon it by the Longshoremen's and Harbor Workers' Compensation Act (LHWCA). Specifically, the petition raises the issue of the applicability of the immunities provided in section 905, subdivisions (a) and (b), of the act to a subcontractor-employer of the injured person from whom the general contractor seeks indemnity when sued by the employee of the subcontractor.

Recognizing that the federal decisions are not consistent, we accept as better reasoned the rule of the cases, including those in the Ninth Circuit and in the California district courts, that extend a broad sweep to the immunities. Accordingly, we conclude that: (1) absent an express or implied contract of indemnity, the employer of a person injured in circumstances covered by the LHWCA has no liability to indemnify a third person sued by the employee for the same injury; and (2) the employer has established as a matter of law that there is not an express contract of indemnity and that no covenant to indemnify can be implied from the contractual arrangement between the general contractor who seeks indemnity and the subcontractor-employer from whom it is sought.

Accordingly, we order that our writ of mandate issue directing the trial court to vacate its order which denied the subcontractor-employer's motion for summary judgment and to enter a new order granting the motion.

Francisco Cuellar sued Clarence E. Frost, doing business as Harbor Sandblasting Company (Harbor), for personal injuries suffered while he was employed by William H. Hutchison and Sons (Hutchison)[1] and engaged in his employment. Cuellar alleged that he was injured by the negligent failure of Harbor to provide a safe place to work, safe equipment, and safe working conditions and practices. Harbor cross-complained against Hutchison. The cross-complaint asserts that Harbor contracted with Hutchison to perform services connected with the cleaning and repainting of the *U.S.S. Wichita*. The cross-pleading claims that Hutchison owed a duty of workmanlike performance and that it breached that duty by negligently performing and controlling the job. The cross-complaint seeks a declaration that Harbor is entitled to indemnity from Hutchison if Harbor should be found liable to Cuellar. A second cause of action in the cross-complaint seeks a declaration of right to indemnity because of the alleged negligence of Hutchison on the theory that Hutchison was primarily and actively negligent in causing the injury to Cuellar.

Hutchison moved for summary judgment on the cross-complaint. Declarations in support of the motion and an excerpt from a deposition establish that the injury to Cuellar occurred while he was working on the *U.S.S. Wichita* at the Long Beach Naval Base, that the contract between Harbor and Hutchison engaging Hutchison to perform work on the *Wichita* was an oral one that did not include an express covenant of indemnity, that Cuellar was covered by the LHWCA when injured, and that Hutchison had fully complied with its obligation under the act by paying approximately $26,000 in disability and medical expenses to Cuellar. While opposing the motion on the law, Harbor filed no declarations.

The trial court denied the motion. Hutchison sought a writ of mandate from this court to overturn the trial court's ruling. Viewing the matter as raising an important and recurring issue of law, we issued our alternative writ. (See *Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 266 [83 Cal.Rptr. 237].)

---

[1] IT Corporation is the successor in interest to Hutchison and is the petitioner in this proceeding.

*Applicable Law*

■ "A defendant moving for summary judgment must set forth with particularity competent evidentiary facts sufficient to establish every element necessary to sustain a judgment in his favor. The opposing party has no obligation to file any declarations . . . in order to defeat the motion . . . . Only if the declarations of the moving defendant considered in light of the issues raised by the pleadings together with the admissions and affirmative allegations set forth in the pleadings of the plaintiff would, standing alone support the summary judgment [need] the court look to any counteraffidavits [or] counterdeclarations." (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724], fn. omitted.) The substantive law applicable to the determination of whether Hutchison has met its burden is the federal maritime law. (*Kelleher* v. *Empresa Hondurena de Vapores, S.A.* (1976) 57 Cal.App.3d 52, 58 [129 Cal.Rptr. 32]; *Keith* v. *S.S. Goldstone* (1978) 81 Cal.App.3d 699, 703 [146 Cal.Rptr. 639].)

*Federal Law of Indemnity*

*Ryan Co.* v. *Pan-Atlantic Corp.* The necessary trail head to any discussion of the federal maritime law of indemnity sought by a third person from the employer of a harbor worker injured by the third person's conduct is *Ryan Co.* v. *Pan-Atlantic Corp.* (1956) 350 U.S. 124 [100 L.Ed. 133, 76 S.Ct. 232]. There the United States Supreme Court dealt with the Longshoremen's and Harbor Workers' Compensation Act before it was amended in 1972. In its pre-1972 configuration, the LHWCA provided in section 5 (33 U.S.C. § 905): "The liability of an employer [for compensation to the worker] prescribed in section 4 shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury . . . ." The owner of a vessel was sued by a longshoreman for personal injuries sustained while the longshoreman was unloading the ship. The worker's theory was that unsafe stowage of cargo by his stevedore-employer in another port had created an unseaworthy condition on the vessel which had caused his injury. The shipowner sought indemnity from the stevedore-employer of the longshoreman which had fully satisfied the obligation imposed upon the employer by the LHWCA.

Split five to four, the high court determined that section 5 of the LHWCA did not preclude the shipowner's action for indemnity. It analyzed the indemnity sought by the shipowner as based upon the stevedore's breach of the implied warranty of workmanlike performance of its contract to load the vessel and as not sounding in tort so as to be subject to the bar of section 5. Reasoning that an express contract by the stevedore to indemnify the vessel would have been enforceable despite the act, the Supreme Court concluded that the implied covenant was also enforceable.

The sweep of *Ryan* has been limited, both by subsequent case law and subsequently enacted statute.

*Decisional law limitation of Ryan.* In *Davis v. Chas. Kurz & Co., Inc.* (9th Cir. 1973) 483 F.2d 184, the Court of Appeals for the Ninth Circuit considered the *Ryan* doctrine in the precise context of the facts of the case at bench. There Davis, an employee of a subcontractor covered by the LHWCA was injured as he entered a hatch of a vessel in the course and scope of his employment to work upon the repair of the ship. Davis sued the prime contractor on the repair job and another intervening subcontractor which had in turn subcontracted with his employer. The prime contractor and the other subcontractor sought indemnity from the employer of Davis.

The Court of Appeals for the Ninth Circuit held that the employer-subcontractor had no duty to indemnify the prime contractor or other subcontractor. It reasoned that the implied warranty of workmanlike performance which the *Ryan* court had imposed upon the stevedore-employer was inseparable from the doctrine of liability based upon lack of seaworthiness of the vessel. The *Davis* court states: "The rationale underlying *Ryan* . . . is that when a shipowner owes a duty of seaworthiness to an injured party (and consequently its liability is not dependent on a finding of its fault) a corresponding duty of indemnity should devolve upon a stevedore whose failure to perform with reasonable safety caused the injury." (483 F.2d at p. 187.) Thus, held the *Davis* court, there was no implied warranty of workmanlike performance in the indemnity context in the subcontractor's agreement with the prime contractor because no duty of seaworthiness was owed by the contractor. (483 F.2d at pp. 186-188.) The court concluded: "[T]he rule in this circuit is that in the absence of a contractual indemnity agreement, express or implied, between the party suing and the party protected by an exclusive liability provision such as § 5 of the Longshoremen's and Harbor

Workers' [Compensation] Act, the former may not recover indemnity from the latter." (483 F.2d at p. 188; accord, *Fitzgerald* v. *Compania Naviera La Molinera* (E.D.La. 1975) 394 F.Supp. 402, 411-412.)

*Legislative limitation of Ryan—the 1972 amendment to section 5 of the LHWCA.* "Dissatisfied with [the] round-about recovery system [by which under *Ryan* the stevedore-employer, having already paid worker's compensation, became saddled with further compensation by the indemnity route], Congress amended the [Longshoremen's and Harbor Workers' Compensation] Act in 1972 by adding Section 905(b), abrogating the vessel's indemnity action against the stevedore and breathing new life into the existing Section 905(a) of the Act that makes the stevedore's compensation payments to its employee the 'exclusive liability' of the stevedore employer. . . ." (*S. S. Seatrain Louisiana, etc.* v. *Cal. Stevedore* (N.D.Cal. 1976) 424 F.Supp. 180, 182.)

Subdivision (b) of section 905 of the LHWCA added in 1972 preserves the right of an employee covered by the LHWCA to recover from a vessel and its owner for negligently caused injury, but provides that: "[T]he employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

The legislative history of subdivision (b) of section 905 discloses an intent to preclude indemnity to the vessel from the employer of the injured worker under either a theory of tort or the "*Ryan* contract theory of warranty of workmanlike performance." (*S. S. Seatrain Louisiana, etc.* v. *Cal. Stevedore, supra,* 424 F.Supp. 180, 182.)

The Longshoremen's and Harbor Workers' Compensation Act covers workers other than longshoremen who are employees of stevedore companies. It specifically covers "any harborworker including a ship

repairman, shipbuilder, and shipbreaker . . . ." (33 U.S.C. § 902(3).) If, therefore, the immunity from indemnity applicable to a stevedore-employer because he has no duty to indemnify the "vessel" applies to Hutchison, the trial court erred in denying Hutchison's motion for summary judgment.

The case law has taken two separate paths in construing the scope of the immunity from liability in indemnity.

One line of cases focuses on the legislative purpose of the 1972 amendment to avoid "the old circuity of action" so as to reduce transactional costs and thereby to create an economic base that permits greater compensation to be paid the injured worker pursuant to the LHWCA. (See, e.g., *Spadola* v. *Viking Yacht Co.* (S.D.N.Y. 1977) 441 F.Supp. 798, 801.) Applying that approach, a consignor of freight, whose employee was injured in the course of shoreside activity related to loading of a ship, was held protected by subdivision (b) of section 905 from an action for indemnity brought by a stevedore sued by the employee although the consignor of freight was not a "vessel" within the literal definition of that term in the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 902(21)). (*Spadola* v. *Viking Yacht Co., supra,* 441 F.Supp. 798.) The broad rule of immunity from indemnity extending it to persons in a similar position to that of the "vessel" where indemnity would permit the circuity of action against which the 1972 amendment is directed has been applied by a federal court in California. (*S. S. Seatrain Louisiana etc.* v. *Cal. Stevedore, supra,* 424 F.Supp. 180.) It is adopted by the one California decision that we have discovered dealing with the subject. (*Standard Fruit & Steamship Co.* v. *Metropolitan Stevedore Co.* (1975) 52 Cal.App.3d 305 [125 Cal.Rptr. 111].)

Other federal cases focus on the definition of "vessel" to strictly limit the application of subdivision (b) of section 905 irrespective of the circuity of litigation that may result. (See, e.g., *Gould* v. *General Mills, Inc.* (W.D.N.Y. 1976) 411 F.Supp. 1181; *Zapico* v. *Bucyrus-Erie Co.* (S.D.N.Y. 1977) 434 F.Supp. 567; *Cargill* v. *U.S.A.* (E.D.Va. 1976) 1977 A.M.C. 50.) Those cases rely upon the *Ryan* implied warranty and construe the warranty as unrelated to the doctrine of liability for unseaworthiness eliminated by the 1972 amendment in the case of longshoremen and others covered by the LHWCA.

Forced to choose between the conflicting lines of decisional law, we accept that which applies the legislative purpose of the 1972 amendment to create a broad immunity from indemnity to the employer of the person subject to the LHWCA who sues another for his personal injuries. Those cases seem the better reasoned. *Davis* is persuasive that the opposing line of cases' reliance upon a warranty of workmanlike performance is misplaced in light of the amendment's abolition of the doctrine of unseaworthiness as a basis for action against the vessel. In *Davis*, the court held that the circumstance giving rise to the implied warranty of workmanlike performance is the duty of seaworthiness. The obligation of seaworthiness to the worker covered by the LHWCA was eliminated by the 1972 amendments. The one California case on the subject takes the approach which we follow here. (*Standard Fruit & Steamship Co.* v. *Metropolitan Stevedore Co., supra,* 52 Cal.App.3d 305.) ■ Even if we believed that the line contra were marginally more persuasive than the case law which broadly applies the immunity from indemnity, we would follow the latter group of decisions. They represent the approach of a California district court and implicity, at least, of the Ninth Circuit. Were we to adopt a different view, we would encourage forum shopping.

*Summary.* Hence, we conclude that *Davis* precludes the existence of Hutchison's duty to indemnify Harbor as a matter of persuasive case law. We conclude, also, that irrespective of *Davis*, the 1972 amendment to the LHWCA adding subdivision (b) to section 905 insulates Hutchison from liability for the indemnity which Harbor seeks to fasten upon it.

### Harbor's Other Contentions

Harbor argues that irrespective of Hutchison's showing designed to insulate Hutchison from indemnity to Harbor if Harbor is found liable to Cuellar on the theory of negligence, there may be theories of liability of Harbor to Cuellar that Hutchison has not addressed by its declarations. Harbor cites as an example the possibility that it may be liable to Cuellar on theories such as strict liability without fault, for which it will be entitled to indemnity. Harbor argues, also, that having alleged that Hutchison breached an implied warranty of workmanlike performance of its contract, summary judgment is inappropriate because it precludes Harbor from recovering damages for that breach on bases other than indemnity.

■ Hutchison's burden on its motion for summary judgment was only to negate the existence of triable issues of fact in a fashion that

entitled it to judgment on the issues raised by the pleadings. (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles, supra,* 34 Cal.App.3d 117, 127.) It was not required to refute liability on some theoretical possibility not included in the pleadings. Cuellar's complaint, while alleging a form book laundry list of duties owed him by Harbor, asserts only that he was injured because of Harbor's negligence operating upon him while he was in the course of his employment for Hutchison. Cuellar's allegations and Harbor's cross-complaint thus bring the case at bench squarely within the spirit of *Davis* and section 905, subdivision (b) of the LHWCA. (Cf. *Southern Pac. Co.* v. *Pittsburgh-Des Moines Steel Co.* (1969) 272 Cal.App.2d 809 [77 Cal.Rptr. 748] where the complaint encompassed two theories of liability and a motion for summary judgment against a cross-complaint for indemnity was addressed to only one of them.)

Harbor seeks to avoid the impact of the pleadings by arguing that at sometime before trial Cuellar may seek to amend his complaint to allege a new theory of liability or may seek an amendment at trial to conform to proof.[2] The time to consider that contingency is when it occurs. Conceivably, Harbor may successfully resist the amendment by establishing the prejudice to it flowing from Hutchison's summary judgment based upon the original complaint and cross-complaint. Conceivably, Cuellar may never move to amend his complaint prior to trial or to conform to proof. Harbor's remedy against the possibilities that it now claims to preclude summary judgment lay in discovery by interrogatories or requests for admissions designed to limit the theories which Cuellar can pursue at trial and a motion to continue the hearing on the motion for summary judgment while the discovery was completed.

Harbor's argument that summary judgment is inappropriate because of its claimed right to damages, other than indemnity arising from Hutchison's breach of an implied warranty of workmanlike performance, lacks substance. The cross-complaint does not allege that damage.

*Disposition*

Our clerk is ordered to issue a writ of mandate directing the respondent superior court to vacate its order of March 21, 1978, denying petitioner

[2]We do not reach the theoretical issue of the manner in which Cuellar's complaint might be amended to assert a liability of Harbor on which Harbor is entitled to indemnity from Hutchison.

Hutchison's motion for summary judgment and to enter a new order granting the motion.

Lillie, Acting P. J., and Hanson, J., concurred.