[Civ. No. 23432. Third Dist. Nov. 30, 1984.]

GRACO, INC., et al., Cross-complainants and Appellants, v.
COLBERG, INC., Cross-defendant and Respondent.

COUNSEL

Russ & Reynolds, Wilbur J. Russ, Jonathan P. Reynolds, Debra A. Chaum, Bronson, Bronson & McKinnon, John W. Crowley and Elliot L. Bien for Cross-complainants and Appellants.

Hall, Henry, Oliver & McReavy, Lee H. Cliff and Henry D. Dicum for Cross-defendant and Respondent.

OPINION

SPARKS, J.—The issue in this appeal is whether defendant tortfeasors in a wrongful death action may maintain cross-actions against the employer of the decedent for contribution or indemnity based upon the employer's alleged negligence when the employer has paid death benefits under the Federal Longshoremen's and Harbor Workers' Compensation Act (LHWCA). (33 U.S.C. § 901 et seq.) The trial court ruled they could not and consequently entered a judgment dismissing the cross-complaints of Graco, Inc., and Earl's Pump and Supply Company, Inc., after it sustained the demurrers of the employer, cross-defendant Colberg, Inc., without leave to amend. We agree and shall affirm.

## FACTS

The parties have submitted the appeal upon a stipulated joint appendix pursuant to California Rules of Court, rule 5.1, and the facts are not in dispute. On October 29, 1980, decedent Robert Corales was employed by Colberg at its Stockton boat works. On that date he was engaged in painting a United States Navy barge and was using an airless spray painter manufactured by Graco and sold to Colberg by Earl's Pump and Supply. Fumes which had accumulated in the work area were ignited by a spark from the spray painter and in the resulting explosion Corales suffered injuries from which he ultimately perished. Colberg's insurance carrier, Industrial Indemnity, paid death benefits to Corales' widow and minor children pursuant to LHWCA.

This litigation commenced when Corales' widow and children filed a complaint in the San Joaquin County Superior Court for damages against Graco and Earl's Pump and Supply. The complaint sought damages for wrongful death based upon causes of action for negligence and for strict products liability. Graco and Earl's Pump and Supply cross-complained against each other. Neither defendant originally sought contribution or indemnity from

Colberg. The basis for their failure to proceed against Colberg was the exclusiveness of liability provisions of LHWCA and their acknowledgement that those provisions had been construed to preclude actions against an employer who had paid benefits under LHWCA.[1]

In early 1983 the United States Supreme Court rendered its decision in *Lockheed Aircraft Corp.* v. *United States* (1983) 460 U.S. 190 [74 L.Ed.2d 911, 103 S.Ct. 1033]. In that case the court considered whether the exclusiveness of liability provisions of the Federal Employees' Compensation Act (FECA) (5 U.S.C. § 8101 et seq.), which utilizes language similar to LHWCA, precluded a third party tort defendant from seeking indemnity from the governmental employer in an action brought by an injured employee. The court held that the provisions of FECA do not bar such an action, and in doing so noted the similarity in the FECA and LHWCA provisions. Although the decision in *Lockheed* involved FECA rather than LHWCA, both Graco and Earl's Pump and Supply assert that the reasoning of the decision is applicable to LHWCA. They were allowed to amend their cross-complaints to seek contribution and/or indemnity from the decedent's employer, Colberg, on the ground that Colberg was negligent in failing to ground the barge on which the decedent was working as a precaution against sparks.

Colberg demurred to the cross-complaints. The trial court found that federal maritime law governs all aspects of the litigation, that maritime law precludes a cross-action for indemnity by third party tortfeasors against an employer who has paid LHWCA benefits, that the decision in *Lockheed* is not controlling, and that even under state law the cross-actions would be barred by Labor Code section 3864.[2] The court sustained the demurrers without leave to amend and entered a judgment dismissing the cross-actions as to Colberg. This appeal followed.

---

[1] In California, that construction was initially adopted by a federal district court in *S. S. Seatrain Louisiana, etc.* v. *Cal. Stevedore* (N.D.Cal. 1976) 424 F.Supp. 180, and was subsequently reiterated by the state Court of Appeal in *IT Corp.* v. *Superior Court* (1978) 83 Cal.App.3d 443 [147 Cal.Rptr. 828].

[2] Labor Code section 3864 provides: "If an action as provided in this chapter prosecuted by the employee, the employer, or both jointly against the third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do executed prior to the injury." Because we conclude that LHWCA precludes these cross-actions against the employer, we do not seek to unravel the tangled relationship between state workers' compensation acts and LHWCA. Consequently, we do not reach the issue whether these indemnity cross-actions may also be independently barred by Labor Code section 3864 without infringing upon the federal supremacy clause. For an extensive analysis of the relationship between state workers' compensation laws and LHWCA, see 4 Larson, Law of Workmen's Compensation (1984) sections 89-89.74, page 16-165 and following.

## DISCUSSION

### I

■ The parties vigorously dispute whether the issues in this case are controlled by the California law of torts or by federal maritime law. The trial court concluded that maritime law governs all aspects of the case. We must disagree with that conclusion. This appeal involves only the alleged tortious conduct of Colberg as a basis for contribution or indemnity; there are no allegations of implied or express contractual rights at issue. The appellants have simply alleged, in accordance with the decision in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], that Colberg's negligence caused the injury to the decedent and therefore Colberg should be required to contribute to the recovery, if any, obtained by the plaintiffs.

The tests for determining whether an action falls within or without the jurisdiction of admiralty differ between actions based upon contracts and those based upon torts. ■ The test whether a contract action is within the jurisdiction of admiralty depends upon the maritime nature of the subject matter of the contract, and neither the place where the contract is made, nor the place where its obligations are to be performed is determinative. "In matters of contract, jurisdiction is governed by the maritime nature of the transaction, irrespective of locality." (1 Benedict on Admiralty (7th ed. 1983) § 141, p. 9-5; see also 2 Am.Jur.2d, Admiralty, § 61, p. 754.) Thus, "[i]f the nature and character of the contract is maritime, that is to say, if the contract is related to a maritime service or a maritime transaction, there is admiralty jurisdiction." (1 Benedict on Admiralty, *supra,* § 182, p. 11-5, fn. omitted.) ■ In contrast, whether a tort is "maritime" has traditionally depended upon the locality of the wrong. (*Executive Jet Aviation* v. *City of Cleveland* (1972) 409 U.S. 249, 253 [34 L.Ed.2d 454, 458, 93 S.Ct. 493]; see also 2 Am.Jur.2d, Admiralty, § 81, p. 765.) A tort committed on navigable water has been considered maritime; a tort committed on land has not. (*Ibid.* See *Victory Carriers, Inc.* v. *Law* (1971) 404 U.S. 202, 211-212 [30 L.Ed.2d 383, 391, 92 S.Ct. 418].) "Historically, admiralty jurisdiction in tort cases depended upon the locality of the wrong. If the tort occurred upon the high seas or navigable waters, the tort action was within admiralty jurisdiction. *The Plymouth,* 70 U.S. (3 Wall.) 20, 35-36, 18 L.Ed. 125 (1866)." (*Myhran* v. *Johns-Manville Corp.* (9th Cir. 1984) 741 F.2d 1119, 1120.)

In *Executive Jet Aviation* v. *City of Cleveland* (1972) 409 U.S. 249 [34 L.Ed.2d 454, 93 S.Ct. 493], the United States Supreme Court modified the situs or location test for determining whether a tort is within the jurisdiction

of admiralty by holding that in the case of a tort committed on navigable water it must also appear that "the wrong bear a significant relationship to traditional maritime activity" before admiralty jurisdiction arises. (409 U.S. at p. 268 [34 L.Ed.2d at p. 467].) In short, the high court held in *Executive Jet* that in tort cases "maritime locality alone was insufficient to invoke admiralty jurisdiction." (*Myhran* v. *Johns-Manville Corp., supra,* 741 F.2d at p. 1120.) In doing so, however, the court supplemented rather than replaced the traditional location requirement. (*Harville* v. *Johns-Manville Products Corp.* (11th Cir. 1984) 731 F.2d 775, 781.) In order for admiralty jurisdiction to apply to tortious conduct, the tort must still occur at a maritime location. (*Ibid.*) "Thus it continues to be true that, in the absence of contrary legislation, '[a]dmiralty jurisdiction' does not 'extend to accidents on piers, jetties, bridges, or even ramps or railways running into the sea.' *Rodrique* v. *Aetna Casualty & Surety Co.,* 395 U.S. 352, 360, 89 S.Ct. 1835, 1839, 23 L.Ed.2d 360 (1969)." (*Lowe* v. *Ingalls Shipbuilding, A Div. of Litton* (5th Cir. 1984) 723 F.2d 1173, 1187.)

In this case the barge upon which the accident occurred had been hauled up out of the water on Colberg's marine railway and was not upon navigable water. The claims of the appellants sound in tort, arising as they do solely out of allegations that Colberg's negligence caused the accident. This being so, the situs or location requirement for admiralty jurisdiction, upon which the application of maritime law depends, has not been shown. Accordingly, we hold that the trial court erred in determining that maritime law governs all aspects of this case. (See *Victory Carriers, Inc.* v. *Law, supra,* 404 U.S. at p. 205 [30 L.Ed.2d at p. 387].)[3]

## II

■    This brings us to the determinative question on appeal: whether the exclusiveness of liability provisions of LHWCA preclude a third party from obtaining contribution from an employer who has paid benefits under that act.    ■    Although we have held that maritime law does not control all aspects of this case, it is clear that LHWCA is applicable. The applicability of LHWCA is not coterminous with the limits of admiralty jurisdiction. That this is true is made clear by the history of LHWCA.[4] At first, Congress attempted to give injured employees within admiralty jurisdiction the right

---

[3]*Fahey* v. *Gledhill* (1983) 33 Cal.3d 884 [191 Cal.Rptr. 639, 663 P.2d 197], relied upon by Colberg, is not to the contrary. That case involved the validity of an exculpatory contract and the court simply held that the validity of a maritime contract must be determined under maritime law. (33 Cal.3d at pp. 890-894.)

[4]The historical development of the workmen's compensation law for longshoremen and harbor workers is traced in 1A Benedict on Admiralty (7th ed. 1983) chapter I, page 1-1 and following.

to proceed under state compensation laws, but these congressional efforts were declared unconstitutional. (*Southern P. Co.* v. *Jensen* (1917) 244 U.S. 205, 218 [61 L.Ed. 1086, 1099, 37 S.Ct. 524].) Congress then enacted LHWCA in 1927. (44 Stat. 1424, 33 U.S.C. § 901 et seq. (1927).) As originally enacted, LHWCA excluded employees outside of the admiralty jurisdiction who could be covered by state compensation laws. (Former 33 U.S.C. § 903.) This limitation proved awkward because it lacked uniformity, contained uncertainties in its coverage, and resulted in many employees literally walking in and out of coverage during their workday. (See *Northeast Marine Terminal Co.* v. *Caputo* (1977) 432 U.S. 249 [53 L.Ed.2d 320, 97 S.Ct. 2348].) In 1972 LHWCA was amended to abrogate the rule that coverage stopped at the water's edge and to include within its scope workers such as the decedent in this case.[5] (*Id.,* at p. 262 [53 L.Ed.2d at p. 332].) However, the 1972 amendments did not oust the states of jurisdiction over what had formerly been considered matters of local concern. (*Sun Ship, Inc.* v. *Pennsylvania* (1980) 447 U.S. 715, 722 [65 L.Ed.2d 458, 464, 100 S.Ct. 2432].) The jurisdiction of LHWCA now coexists with state jurisdiction in the areas where state law may constitutionally operate. (*Ibid.*) In this case it is clear that LHWCA was applicable and it is undisputed that benefits were paid pursuant to that act. Accordingly the trial court correctly concluded that the exclusiveness of liability provisions of LHWCA are applicable.

■ Section 5 of LHWCA (33 U.S.C. § 905), provides: "(a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the

---

[5]By the 1972 amendments, Congress extended coverage shoreward by broadening the definition of "navigable waters of the United States" to include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel." (33 U.S.C. § 903) "But with the definition of 'navigable waters' expanded by the 1972 Amendments to include such a large geographical area, it became necessary to describe affirmatively the class of workers Congress desired to compensate. It therefore added the requirement that the injured worker be 'engaged in maritime employment,' which it defined to include 'any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but . . . not . . . a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.' 33 USC § 902(3) (1970 ed., Supp V) [33 U.S.C.S. § 902(3)]." (*Northeast Marine Terminal Co.* v. *Caputo* (1977) 432 U.S. 249, 264 [53 L.Ed.2d 320, 333, 97 S.Ct. 2348], fn. omitted.) As a ship repairman killed while working on a vessel in dry dock, decedent was clearly covered under LHWCA.

injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

"(b) In the event of injury to a person covered by this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

Appellants acknowledge that prior to the United States Supreme Court decision in *Lockheed* the exclusiveness of liability provisions of LHWCA had been construed to preclude any actions for indemnity or contribution against an employer based on allegations of negligence. We are satisfied that the clear weight of authority so held. (See *Zapico* v. *Bucyrus-Erie Co.* (2d Cir. 1978) 579 F.2d 714, 719 [47 A.L.R.Fed. 399]; *White* v. *Texas Eastern Transmission Corporation* (5th Cir. 1975) 512 F.2d 486, 489-490; *Davis* v. *Chas. Kurz & Co., Inc.* (9th Cir. 1973) 483 F.2d 184, 187-188.) The California appellate courts which considered the issue also adhered to this interpretation of LHWCA. (*IT Corp.* v. *Superior Court* (1978) 83 Cal.App.3d 443, 451 [147 Cal.Rptr. 828]; *Standard Fruit & Steamship Co.* v. *Metropolitan Stevedore Co.* (1975) 52 Cal.App.3d 305, 312 [125 Cal.Rptr. 111]. See also *Schreefel* v. *Okuly* (1983) 143 Cal.App.3d 818, 826 [192 Cal.Rptr. 402].) Thus, at least prior to the decision in *Lockheed,* appellants' claims against Colberg based upon negligence would have been subject to demurrer. The question here is whether the decision in *Lockheed* compels a different result.

*Lockheed* arose out of the crash of an aircraft built by Lockheed and operated by the United States Air Force. A civilian employee died in the

crash and her survivors were paid benefits under the Federal Employees' Compensation Act (FECA). (5 U.S.C. § 8101 et seq.) The employee's administrator filed a suit against Lockheed as the manufacturer of a defective product, and Lockheed sought indemnification from the government under the Federal Tort Claims Act. (28 U.S.C. §§ 1346(b), 2671 et seq.) The government did not deny that its negligence caused the accident, but sought immunity from Lockheed's claim under the exclusiveness of liability provisions of FECA. Those provisions, contained at 5 United States Code section 8116(c), state: "The liability of the United States . . . under [FECA] . . . with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States . . . to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States . . . because of the injury or death . . . ."

The *Lockheed* court noted that it had previously construed FECA in *Weyerhaeuser S. S. Co.* v. *U.S.* (1963) 372 U.S. 597 [10 L.Ed.2d 1, 83 S.Ct. 926]. That case involved a mutual fault collision between two vessels, one of which was owned by the government. The long-settled admiralty rule in such cases, referred to as the divided damages rule, required each vessel to pay to the other one-half of its proven damages. The government was subject to an admiralty suit under the Public Vessels Act (46 U.S.C. § 781 et seq.), and the vessels complained against each other. The dispute arose over whether Weyerhaeuser could include in its damages an amount it had paid in settlement of a suit brought by a government employee who had been paid benefits under FECA. The court noted that the Public Vessels Act was intended to impose upon the government the same liability which a private shipowner would bear and that under the same circumstances a private party would be required to contribute to the settlement costs of Weyerhaeuser. The court considered the history of FECA and found that its exclusive liability provisions were intended to concern only the relationship of the government and its employees, and their representatives and dependents. There was no evidence that Congress intended to affect the rights of unrelated third parties, nor to disturb settled doctrines of admiralty law governing the mutual rights of shipowners in collision cases. (372 U.S. at p. 601 [10 L.Ed.2d at p. 5].) The court held that the divided damages rule must prevail over a statute limiting the liability of a shipowner to unrelated third parties and the rule was therefore unaffected by FECA. (*Id.,* at pp. 603-604 [10 L.Ed.2d at pp. 6-7].)

The *Lockheed* court held that the decision in *Weyerhaeuser* was equally applicable to the dispute in *Lockheed.* (460 U.S. at p. 196 [74 L.Ed.2d at p. 918].) The court noted that in the 20 years since the *Weyerhaeuser* decision Congress had not modified the provisions of FECA to overrule that

decision. This was particularly significant to the court because the exclusiveness of liability provisions had been recodified and modified in other particulars. (*Id.*, at p. 196, fn. 6 [74 L.Ed.2d at p. 918].) The court rejected the claim that *Weyerhaeuser* had involved a balancing of the provisions of FECA against the divided damages rule, and concluded that the decision "relates simply to congressional intent." (*Id.*, at p. 195, fn. 5 [74 L.Ed.2d at p. 918].) The provisions of FECA did not directly bar a claim for indemnification or contribution against the government. (*Id.*, at p. 199 [74 L.Ed.2d at p. 920].)

*Lockheed* did not involve the exclusiveness of liability provisions of LHWCA and consequently does not directly control the issue in this case. Nevertheless, this appeal must be considered in light of the decision in *Lockheed* due to the manifest similarity of the language of FECA and that of LHWCA. Indeed, the *Lockheed* court noted this similarity. (*Id.*, at p. 194 [74 L.Ed.2d at p. 917].) Appellants contend that the reasoning of *Lockheed* compels a similar result with respect to LHWCA. We disagree. Both *Weyerhaeuser* and *Lockheed* were based upon the complete absence of indications that Congress intended to affect third party rights in FECA. We find a different intent in LHWCA and we conclude that *Lockheed* is not controlling.

We begin our discussion with the decision in *Halcyon Lines* v. *Haenn Ship Corp.* (1951) 342 U.S. 282 [96 L.Ed. 318, 72 S.Ct. 277]. In that case Halcyon Lines hired the Haenn Corporation to make repairs on its ship which was moored in navigable waters. An employee of Haenn was injured through the combined negligence of Halcyon and Haenn and recovered damages against Halcyon. Halcyon sought contribution from Haenn. The Supreme Court denied such a claim, holding that there was no right to contribution among joint tortfeasors in a noncollision maritime case. The court found it unnecessary to consider whether LHWCA barred the claim because a substantive right of contribution had not been recognized and "because Congress while acting in the field has stopped short of approving the rule of contribution here urged, we think it would be inappropriate for us to do so." (342 U.S. at p. 287 [96 L.Ed. at p. 321].)

In *Pope & Talbot, Inc.* v. *Hawn* (1953) 346 U.S. 406 [98 L.Ed. 143, 74 S.Ct. 202], the Supreme Court summarily affirmed the denial of a claim for contribution under the *Halcyon* circumstances, but a related issue required resolution. It appeared that the employer had paid LHWCA benefits to the employee which, pursuant to agreement and under LHWCA, it would be entitled to recoup from the employee's judgment. The shipowner argued that the amount of the LHWCA benefits should be offset from the judgment because to allow the employee to keep them would amount to double recov-

ery and to allow the employer to keep them would reward it for its negligence. The Supreme Court noted that the employer's recovery of the benefits was required by LHWCA, and said "[the shipowner's] contention if accepted would frustrate this purpose to protect employers who are subject to absolute liability by the Act. Moreover, reduction of [the shipowner's] liability at the expense of [the employer] would be the substantial equivalent of contribution which we declined to require in the *Halcyon* case." (346 U.S. at p. 412 [98 L.Ed. at p. 152].)

In *Cooper Stevedoring Co.* v. *Kopke, Inc.* (1974) 417 U.S. 106 [40 L.Ed.2d 694, 94 S.Ct. 2174], a ship was partially loaded by a stevedoring company at one port and then proceeded to another port for further loading by another stevedoring company. An employee of the second stevedoring company was injured at least in part due to the negligence of the first stevedoring company. The employee was granted judgment against the shipowner and the shipowner was given the right of contribution against the first stevedoring company on the ground that the decision in *Halcyon* is limited to situations where the alleged joint tortfeasor is immune from tort liability by statute. The Supreme Court agreed. It noted that the underlying basis of the decision in *Halcyon* was the limitation of liability of an employer under LHWCA and stated that this concern still has much force; indeed *Halcyon* is still good law on its facts. (417 U.S. at pp. 112, 115 [40 L.Ed.2d at pp. 701-702].) However, where a party is not obligated under LHWCA and is therefore not entitled to the exclusiveness of liability provisions of that act, then contribution is to be permitted. (*Ibid.*)

While the court has consistently refused to permit an employer to become indirectly liable for an employee's injuries beyond its LHWCA liability where the claim for contribution was based on tort, a partial encroachment on the employer's immunity arose in another context. Under admiralty law a shipowner could be held strictly liable for the failure to provide a seaworthy ship. In *Seas Shipping Co.* v. *Sieracki* (1945) 328 U.S. 85 [90 L.Ed. 1099, 66 S.Ct. 872], the court held that this duty was not limited to seamen, but extended to longshoremen employed by a stevedore to load a ship in port. Thus an injured longshoreman could receive LHWCA benefits from his employer and bring an action against the shipowner on strict liability principles. In *Ryan Co.* v. *Pan-Atlantic Corp.* (1955) 350 U.S. 124, at pages 130 to 133 [100 L.Ed. 133, at pages 140-142, 6 S.Ct. 232], a shipowner sought indemnification from an employer stevedore on the ground that the ship was rendered unseaworthy by the stevedore's failure to fulfill its contract to load the ship in a workmanlike manner. The Supreme Court noted that the claim was not for contribution from a joint tortfeasor, and was not based upon any duty or obligation of the stevedore to its employee; rather the claim was based upon the stevedore's voluntary and self-sufficient con-

tract with the shipowner and was therefore not precluded by the provisions of LHWCA. Although the decision in *Ryan* was based upon a contractual relationship between the stevedore and the shipowner, in later cases recovery was upheld where the contractual relationship was considerably more attenuated. (See *Weyerhaeuser S. S. Co.* v. *U.S.*, *supra*, 372 U.S. at p. 603 [10 L.Ed.2d at p. 6].)

■ In 1972 Congress acted to abrogate the decision in *Ryan*. Former section 5 of LHWCA (33 U.S.C. § 905), became subdivision (a) and subdivision (b) was added to section 905. In subdivision (b) the strict liability action for unseaworthiness was abrogated. An injured employee may bring an action against a vessel, but only on the basis of the vessel's negligence and in that event "the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements to the contrary shall be void." The effect of this amendment was to overrule the decision in *Ryan* to the extent it made an employer circuitously liable for injuries to its employees. (*Cooper Stevedoring Co.* v. *Kopke, Inc.*, *supra*, 417 U.S. at p. 113, fn. 6 [40 L.Ed.2d at p. 701].) The congressional intent expressed in the amendment is clear: it was to end the circuity of actions in which an employer might be liable in excess of its LHWCA responsibilities to the end that the employer's resources be used to provide improved benefit levels rather than to defray the costs of multiple liabilities. (See *Standard Fruit & Steamship Co.* v. *Metropolitan Stevedore Co.*, *supra*, 52 Cal.App.3d at pp. 311-312, and the excerpt from the congressional record published there in fn. 1.)

■ From this discussion it can be seen that the judicial and congressional history of FECA and LHWCA differ completely despite the similarity of the language in each. In *Lockheed* the court recognized that the issue was solely one of congressional intent. The congressional record revealed no intent to preclude contribution actions against the government under FECA, and although the court had allowed such actions 20 years earlier Congress had made no effort to abrogate that decision. In contrast, the court has consistently refused to permit an action against a maritime employer based upon its alleged negligence as a basis for contribution. Although the court has found it unnecessary to expressly base its decisions upon LHWCA, the decision in *Cooper* leaves no doubt that those provisions are an important consideration. ■ "Once Congress has relied upon conditions that the courts have created, we are not as free as we would otherwise be to change them. A change in the conditions would effectively alter the statute by causing it to reach different results than Congress envisioned." (*Edmonds* v. *Compagnie Generale Transatl.* (1979) 443 U.S. 256, 273 [61 L.Ed.2d 521, 535, 99 S.Ct. 2753].) ■ To the extent the high court had earlier permitted a circuity of actions whereby an employer could be indirectly liable

for an employee's damages, Congress acted in clear and certain terms to abrogate such a judicial construction by enacting the 1972 amendments to LHWCA. The congressional record reveals a clear intent that such circuitous actions should not be permitted.

We finally note a strong policy reason for rejecting appellants' claims. As we have previously noted, prior to the 1972 amendments to LHWCA, the application of the act stopped at the water's edge, and therefore there was a substantial disparity in treatment of maritime workers depending upon which side of the water an accident occurred. (See *Sun Ship, Inc.* v. *Pennsylvania, supra,* 447 U.S. at pp. 721-722 [65 L.Ed.2d at p. 464].) The 1972 amendments to LHWCA resolved this disparity by extending the scope of LHWCA landward. (33 U.S.C. § 903.) Congress wanted a uniform system of compensation which would not depend upon the fortuitous circumstance of whether the accident occurred over land or over water. (*Northeast Marine Terminal Co.* v. *Caputo, supra,* 432 U.S. at p. 272 [53 L.Ed.2d at p. 338].) To accept appellants' arguments would defeat this purpose by once again injecting disparity into LHWCA depending upon the location of the accident. In short, an employer would either be liable or immune from contribution depending upon whether the accident occurred over land or over water. Since the "horns of the jurisdictional dilemma press as sharply on employers as on employees" (*Davis* v. *Department of Labor* (1942) 317 U.S. 249, 255 [87 L.Ed. 246, 249, 63 S.Ct. 225]), such a result is clearly contrary to the purpose of the 1972 amendments of LHWCA.

For these reasons on we do not find the decision in *Lockheed* with respect to FECA to be controlling in this case involving LHWCA. Instead, we adhere to the decisions in *IT Corp.* v. *Superior Court, supra,* 83 Cal.App.3d at page 451, and *Standard Fruit & Steamship Co.* v. *Metropolitan Stevedore Co., supra,* 52 Cal.App.3d at page 312. Under those decisions the trial court correctly sustained Colberg's demurrers.

The judgment is affirmed.

Puglia, P. J., and Mering, J.,* concurred.

Petitions for a rehearing were denied December 27 and 28, 1984, and appellants' petitions for a hearing by the Supreme Court were denied February 13, 1985.

---

*Assigned by the Chairperson of the Judicial Council.